UNITES STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ANDRE GARFIELD,

                Petitioner,                **DECISION AND ORDER**
       -vs-                                      No. 02-CV-0498

Superintendent T. POOLE, Five Points
Correctional Facility,

                Respondent.
_____

## INTRODUCTION

Petitioner, Andre Garfield ("Garfield"), filed this *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging his conviction in Monroe County Court on two counts of first degree robbery. The parties have consented to disposition of this matter by the undersigned pursuant to 28 U.S.C. § 636(c).

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The conviction here at issue stems from Garfield's involvement in an armed robbery that took place on August 27, 1997, at the Kim Ching Restaurant in the City of Rochester. Garfield and three co-defendants, all of whom were armed with guns, entered the restaurant and demanded property from several patrons. The security videotape showed that Garfield fired his gun at the owner of the restaurant, striking him in the chest at close range; fortunately, the injury was not fatal. As Garfield was fleeing, he was shot by the police. By Indictment #97, Garfield and three co-defendants were charged with eight counts of first degree robbery, two counts of first degree criminal use of a firearm, three counts of attempted first degree assault, and one

count of first degree reckless endangerment.

On November 24, 1997, Garfield pled guilty to two counts of first degree robbery in full satisfaction of the indictment, with a sentence promise of twelve and one-half to twenty-five years. Garfield agreed to waive his appellate rights and to cooperate with the state in prosecuting his three co-defendants.

On January 28, 1998, Garfield appeared in court with his assigned attorney, Elma Bellini ("Bellini"). When asked whether he was appearing with Bellini as his attorney, Garfield responded, "No." T.2. Bellini informed the court that Garfield "had indicated dissatisfaction with [her] representation to this point, and he wishe[d] to address the court regarding that." *Id.* The court announced that he had received a letter to that effect from petitioner. *Id.* Garfield's mother, who was present in court, stated that she had been trying to retain a lawyer for her son but had been unsuccessful so far. The court explained that he did not want her to "think that by hiring another attorney on the case that that would automatically mean that the history of the case up to this point would disappear." T.4. The court agreed to grant a continuance until February 6, 1998, to afford Mrs. Garfield more time. *Id.* Nothing was put on the record regarding the reasons for Garfield's dissatisfaction with attorney Bellini.

When Garfield appeared in court on February 6, 1998, he stated that his mother had not had enough time to find another lawyer. Mrs. Garfield asked the court to give her another two weeks. The court agreed, but stated, "[t]his is it." T2.2. The parties appeared again on February 20, 1998. Garfield still did not want attorney Bellini to represent him, and Mrs. Garfield claimed she had not yet been able to retain an attorney. T3.2. Upon hearing this, the judge stated that he was "going to proceed judicially[.]" T3.3. The court then heard arguments from the prosecutor

and attorney Bellini regarding their sentencing recommendations. At the close of the hearing, the judge imposed the agreed upon sentence of twelve and one-half to twenty-five years. On February 20, 1998, Garfield was sentenced in accordance with the plea agreement.

Represented by a different attorney from the public defender's office, Garfield appealed his conviction, arguing only that his sentence was harsh and excessive. The Appellate Division, Fourth Department, of New York State Supreme Court unanimously affirmed the conviction. *People v. Garfield*, 270 A.D.2d 974 (App. Div. 4th Dept. 2000). The New York Court of Appeals denied leave to appeal. *People v. Garfield*, 95 N.Y.2d 797 (N.Y. 2000).

On December 20, 2000, Garfield collaterally attacked his conviction by means of an application for a writ of error *coram nobis*, alleging that his appellate counsel was ineffective. This motion was denied without opinion by the Appellate Division on March 21, 2001. On August 29, 2001, Garfield moved to vacate the judgment pursuant to New York Criminal Procedure Law § 440.10, arguing that trial counsel was ineffective for failing to inform him of the potential defense of intoxication; that the trial court erred when it did not inform him of the existence of the intoxication defense and his right to withdraw his plea "regarding defendant[']s drug use and possession of the same at the time said crime occurred"; and that his guilty plea was involuntarily entered because he "was coerced into committing the crime and therefore subjugated by duress." In support of his motion, Garfield submitted, *inter alia*, a pre-sentencing letter to the trial court asking to withdraw his guilty plea, a letter to his mother from an individual named Lamont Gordon ("Gordon"), and the pre-sentence report. The trial court summarily denied the motion for the reasons set forth in the prosecution's answering affirmation. *See* October 3, 2001 County Court Order. The Appellate Division denied leave to appeal on March

27, 2002.

This habeas petition followed. Respondent does not raise the defense of non-exhaustion, and all of Garfield's claims appear to be fully exhausted and properly before this Court. For the reasons set forth below, the petition is denied.

## DISCUSSION

### Standard of Review

To prevail under 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act ("AEDPA") in 1996, a petitioner seeking federal review of his conviction must demonstrate that the state court's adjudication of his federal constitutional claim resulted in a decision that was contrary to or involved an unreasonable application of clearly established Supreme Court precedent, or resulted in a decision that was based on an unreasonable factual determination in light of the evidence presented in state court. *See* 28 U.S.C. § 2254(d)(1), (2); *Williams v. Taylor*, 529 U.S. 362, 375-76 (2000).

### Merits of the Petition

**1.   Ineffective assistance of trial counsel**

Garfield claims that he was denied the effective assistance of trial counsel because attorney Bellini "did not inform defendant of a legitimate defense and failed to inform the court of said defense based on defendant's intoxication at the imposition [*sic*] of the crime." Petition at 6 (Docket #1).

To prevail on a claim that trial counsel rendered constitutionally ineffective assistance, a habeas petitioner must show that counsel's representation fell below "an objective standard of reasonableness" under "[p]revailing norms of practice" and "affirmatively prove prejudice" by

showing that there is a "reasonable probability" that, "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 688, 693-94 (1984).  A petitioner must establish *both* that counsel's performance was deficient and that he was prejudiced as a result of counsel's errors in order to obtain relief on an ineffective assistance claim. *See id.* at 687.

      Here, Garfield is unable to establish either aspect of the *Strickland* test. In his undated letter to the trial court (which was presumably before sentencing but after the guilty plea), Garfield alleges that some unnamed individual at an unspecified time derailed his future basketball career by giving him drugs. Nowhere in that letter does he say that he was under the influence of drugs at the time of the robbery; in fact, he does not really allude to the robbery at all. Garfield acknowledges that he failed to inform his attorney of his alleged drug use owing to his belief that she did not "represent [him] right."  Thus, Garfield never alerted trial counsel to the possibility of an intoxication defense. Trial counsel cannot be faulted for failing to read her client's mind.

      Furthermore, the records regarding the incident would not necessarily alerted counsel to the possibility of an intoxication defense. In the emergency department records generated when Garfield sought treatment for his gunshot wounds, there is a notation that there was "marijuana on body & clothes." It is not clear what this means; it could mean that Garfield had the drugs on his person or that there was an odor of marijuana smoke on him. In any event, nothing more appears to have been said about Garfield's mental state; there is no idnication that he was drunk or high when he was admitted to the hospital. In the pre-sentence report, the "yes" box is checked next to the question "drugs used at offense" and the "no" box was checked next to the question

"alcohol used at offense." Without more, these records were insufficient to raise an issue in a reasonable attorney's mind regarding a potential intoxication defense.

Where the alleged error of counsel is a failure to advise the defendant of a potential affirmative defense to the crime charged, "the resolution of the 'prejudice' inquiry will depend largely on whether the affirmative defense likely would have succeeded at trial." *Hill v. Lockhart*, 474 U.S. at 59. At the outset, the Court notes that intoxication is not actually a complete affirmative defense to a criminal charge; it rather merely reduces the gravity of the offense by negating the specific intent element of the crime charged. *People v. Harris*, 98 N.Y.2d 452, 474 n.4, 475 (N.Y. 2002) (citing N.Y. Penal Law § 15.25). While the requisite level of intoxication "need not be to the extent of depriving the accused of all power of volition or of all ability to form an intent," *People v. Kastenhuber*, 57 A.D.2d 655 (App. Div. 3d Dept. 1977) (internal quotation and citation omitted), the degree of intoxication that a defendant must demonstrate is quite high, *see, e.g.*, *People v. Monroe*, 277 A.D.2d 598 (App. Div. 1st Dept. 2000) (rejecting contention that counsel should have argued intoxication defense; defendant's conduct in driving his vehicle away from the scene, his actions upon apprehension and his ability to repeatedly recount his detailed version of the events "simply d[id] not evince incapacitating intoxication").[1] Although it is true that a defendant may offer evidence of his intoxication whenever it is relevant to negate an element of the crime charged, *see* N.Y. Penal Law § 15.15, even an intoxicated

---

[1] *Cf. People v. Gaines*, 83 N.Y.2d 925, 927 (N.Y. 1994) (defendant not entitled to jury charge on defense of intoxication where defendant's evidence lacked requisite details tending to corroborate his claim of intoxication, such as the number of drinks, the period of time during which they were consumed, the lapse of time between consumption and the event at issue, whether he consumed alcohol on an empty stomach, whether his drinks were high in alcoholic content, and the specific impact of the alcohol upon his behavior or mental state; neither witness's statement that defendant was "high" nor the police officer's comments that defendant had glassy eyes and alcohol on his breath "added sufficiently to defendant's statements to warrant the intoxication instruction").

person may be capable of forming the requisite intent. *People v. Robinson*, 161 A.D.2d 676 (App. Div. 2d Dept.1990) (citing *People v. Goodman*, 152 A.D.2d 705 (2d Dept. 1989); *People v. Bell*, 111 A.D.2d 926 (2d Dept. 1985)). Here, Garfield has not established that he had a colorable defense of intoxication, and so he could not have been prejudiced by trial counsel's failure to raise this issue. To this day, Garfield has not explained which drugs were ingested on the night of the robbery and in what quantity. In the pre-sentence report, Garfield did tell the probation officer that he was "out of his mind" from "smoking drugs" at the time of the incident. However, when asked to identify the drugs and the quantity he used, he declined, stating, "I don't want to discuss the incident." Thus, Garfield has not provided a basis for concluding that he had even a plausible defense of intoxication.

**2.      Trial court error**

Garfield claims that the trial court "erred when it did not inform petitioner of the existence of an intoxication defense, and that he had a right to withdraw his plea based on the same." Again, Garfield is effectively alleging that the trial court should be found at fault because it did not read petitioner's mind. At no time during the plea colloquy did Garfield or anyone else mention that the robbery involved drug or alcohol use. Thus, the trial court had no basis on which to question Garfield's ability to form the requisite intent at the time of the robbery. Moreover, in light of the complete factual allocation given readily by petitioner, the court certainly had no grounds on which to suspect that Garfield's plea was invalid. This claim affords no basis for habeas relief.

**3.      Ineffective assistance of appellate counsel**

Garfield claims that his appellate counsel was ineffective "because there existed a

Conflict of interest at the time of her representation during Petitioner's direct appeal." Petition at 4 (Docket #1).  A claim for ineffective assistance of appellate counsel is evaluated upon the same standard as is a claim of ineffective assistance of trial counsel.  *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994) (citing *Claudio v. Scully*, 982 F.2d 798, 803 (2d Cir. 1992)), *cert. denied*, 508 U.S. 912 (1993)).  A petitioner alleging ineffective assistance of appellate counsel must prove both that appellate counsel was objectively unreasonable in failing to raise a particular issue on appeal, and that absent counsel's deficient performance, there was a reasonable probability that defendant's appeal would have been successful. *Mayo,* 13 F.3d at 533-34; *Smith v. Robbins*, 528 U.S. 259, 285 (2000); *Aparicio v. Artuz,* 269 F.3d 78, 95 (2d Cir. 2001).

      As discussed above, Garfield apparently became dissatisfied with his trial counsel (a county-provided assistant public defender) during the course of plea negotiations and sentencing and tried, unsuccessfully, to retain counsel of his own. When he was unable to do so, a different attorney from the same public defender's office represented him on direct appeal. Garfield's allegations with respect to this claim are rather unclear, but he seems to be arguing that he should not have been represented by the second attorney from the public defender's office when he was dissatisfied with the first attorney from that same office.  Garfield appears to be arguing, by implication, that the second attorney should have raised a claim of ineffective assistance of counsel, but was prevented from doing so due to her affiliation with the first attorney by virtue of their employment at the same office.

      Garfield's conclusory allegations, without more, are insufficient to create even the appearance of a conflict of interest. Moreover, he was not prejudiced appellate counsel's failure to raise an ineffective assistance of trial counsel claim on appeal. Tellingly, Garfield has never

articulated the basis for his dissatisfaction with his trial counsel (attorney Bellini). The most he has ever said was, "I feel she didn't represent me right." *See* Letter to County Court Judge John Connell from Petitioner. Without any information from petitioner or from the record on which to make an argument that trial counsel was ineffective, appellate counsel acted reasonably in not raising such a claim on appeal. Because the claim had no factual or legal basis, it most certainly would have been rejected by the appellate court.

4.      **Involuntary guilty plea**

To pass constitutional muster, a defendant's guilty plea is required to be entered into knowingly and voluntarily, with an understanding of its consequences:

> It is beyond dispute that a guilty plea must be both knowing and voluntary. The standard was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant. That is so because a guilty plea constitutes a waiver of three constitutional rights: the right to a jury trial, the right to confront one's accusers, and the privilege against self-incrimination.

*Parke v. Riley*, 506 U.S. 20, 28-29 (1992) (quotations and citations omitted). Garfield avers that his guilty plea was "involuntarily and unintelligently entered[;] petitioner had been coerced by duress into committing this crime[.]" Petition at 8 (Docket #1). In support of this contention, he points to a letter received by his mother in 1999 from an individual named Lamont Gordon ("Gordon"), in which Gordon wrote, "[I]t was me who intimidated Andre and menacingly influenced your son to enter that restaurant" by "forcing him to take the drugs that I provided for him." Gordon continued, "I was so niave [*sic*]! It actually hurted [*sic*] me to continuously have to threaten and assault Andre with my piece to convince him to go to that spot and get me money." Exculpatory statements such as these in behalf of an accused by co-conspirators are always to be

viewed with suspicion. Indeed, because of their inherent unreliability, the rules underlying such statements require corroboration, which Gordon has not provided. *See*, *e.g.*, Fed. Rules Evid. 804(b) (3) ("A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement."). Otherwise, every inmate or other person serving time would unleash an epidemic of confessions to crimes in order to exonerate their comrades. In any event, the fact remains that prior to his guilty plea, Garfield never mentioned to anyone–neither the court nor either of his attorneys nor the probation officer–that he had been coerced into participating in the robbery.

A trial court may fairly rely upon a defendant's sworn statements made in open court. *United States v. Hernandez*, 242 F.3d 110, 114 (2d Cir. 2001) (finding that habeas petitioner's claim of ineffective assistance of counsel in regard to plea agreement and plea hearing failed on the merits where petitioner's allegations contradicted his plea allocution statements). Garfield's statements under oath during the plea colloquy belie his claim of duress. After being informed of the sentence promise and the requirement that he cooperate with the prosecution with regard to the investigations into the co-defendants, Garfield informed the court that it was his intention to plead guilty. P.6.[2] The court explained all of the constitutional rights that Garfield was agreeing to forego, and Garfield stated that he understood them. P.7. He affirmed that he had had enough time to discuss the matter with his attorney. *Id.* He further denied that anyone threatened him or forced him to plead guilty. *Id.* Without hesitation, Garfield gave a factual colloquy, stating in relevant part, "I forced him and her [the victims] to give me a wallet and the watch and the

---

[2] Citations to "P.__" refer to the transcript of the plea proceeding.

purse." P.8-9. When asked how he forced them to do that, he replied, "Well, I went in and robbed them" with a gun which he knew was loaded. P.9. Garfield explained how the incident came about, stating that he and his co-defendants were "walking down the street, and we though about going in there. So, we went in there . . . and robbed them." P.10. There is no indication in the record that Garfield's plea was anything but knowing and voluntary. Accordingly, habeas relief is not warranted.

## CONCLUSION

For the reasons stated above, Andre Garfield's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied, and the petition is dismissed. Because he has failed to make a substantial showing of a denial of a constitutional right, I decline to issue a certificate of appealability. *See* 28 U.S.C. § 2253.

**IT IS SO ORDERED**

/s/ *Victor E. Bianchini*
_____
VICTOR E. BIANCHINI
United States Magistrate Judge

DATED:   March 23, 2006
         Buffalo, New York.